UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ANGELA R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-881-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Angela R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on May 14, 2019, alleging disability beginning December 26, 2018 (the disability onset date), due to seizures, migraine headaches, anxiety, depression, and other mental health issues. Transcript ("Tr.") 272-78, 279-84, 304. The claims were denied initially on October 10, 2019, and again upon reconsideration on

December 3, 2019, after which Plaintiff requested a hearing. Tr. 14. On November 16, 2020, Administrative Law Judge Kieran McCormack ("the ALJ") conducted a telephonic hearing.[1] Tr. 14. Plaintiff appeared and testified at the hearing and was represented by Nicholas Divirgilio, an attorney. *Id*. Kenneth Smith, an impartial vocational expert, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on November 27, 2020, finding that Plaintiff was not disabled. Tr. 11-29. On June 11, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's November 27, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 14.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his November 27, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since December 26, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: seizure disorder, headaches, asthma, bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), and cannabis use disorder (20 CFR 404.1520(c) and 416.920(c))..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work at jobs that require traversing climb ladders, ropes, or scaffolds. She cannot work at jobs containing concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration and/or excessive noise. She cannot work at jobs containing concentrated exposure to airborne irritants such as fumes, odors, dusts, gases, and/or smoke. She cannot work at jobs requiring the operation of motor vehicles or heavy machinery. She cannot work at jobs requiring the use of sharp instruments. She also cannot work at jobs containing concentrated exposure to unprotected heights, unprotected machinery, and/ or machinery with moving mechanical parts. She can work at low stress jobs, defined as jobs containing no more than simple, routine, and repetitive tasks, involving only simple work-related decisions; with few, if any, workplace changes; and where there is only occasional interaction with supervisors, coworkers, and/ or the general-public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 3, 1996 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 26, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 14-29.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on May 14, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 29.

The ALJ also determined that based on the application for supplemental security income protectively filed on May 14, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts a single point of error, arguing that the ALJ erred in his finding regarding the persuasiveness of the October 2019 opinion of treating nurse practitioner Sheena Fant, MSN, PMHNP-BC ("MS. Fant"). *See* ECF No. 8-1 at 10-17. Plaintiff alleges that the ALJ found the opinion "not persuasive" without properly assessing the supportability and consistency factors. *See id*. Accordingly, argues Plaintiff, the RFC finding, as well as the ALJ's disability decision were not supported by substantial evidence. *See id*.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination. *See* ECF No. 9-1 at 12-17. The Commissioner also argues that the ALJ reasonably found Ms. Fant's opinion unpersuasive because her extreme attention and concentration

limitations were unsupported by her own essentially unremarkable mental status findings and inconsistent with other record evidence. *See id.*

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly assessed the record evidence, and substantial evidence, including the medical opinion evidence and Plaintiff's treatment history, supports the ALJ's RFC finding. Accordingly, the Court finds no error.

On July 13, 2017 and July 26, 2017, Plaintiff was treated in the Emergency Department at Niagara Falls Memorial Medical Center ("NFMMC") for anxiety disorder. Tr. 377-79. Thereafter, on August 2, 2017, Plaintiff attended a primary care visit with Kristel Stevens, RPA-C ("MS. Stevens"), at Mount St. Mary's Hospital of Niagara Falls ("Mount St. Mary's"). Tr. 429-32. A depression screening indicated "severe depression. Tr. 377. Plaintiff complained of worsening anxiety and depression and reported experiencing panic attacks at work. *Id*. She was prescribed two different psychiatric medications. Tr. 377-78. At a follow-up visit with Ms. Stevens on October 19, 2017, Plaintiff reported that her antidepressant medication had improved her symptoms; however, she was still having mood swings, so her dosage was increased. Tr. 423-24.

At a follow-up visit with Ms. Stevens on February 22, 2018, Plaintiff reported migraines and a "seizure" at work which resulted in an ED visit at Mount Saint Mary's Neighborhood Health. Tr. 396. Plaintiff reported that she started to get a migraine headache and then became dizzy, and

her hand began to tingle. *Id*. She also reported a history of panic attacks and anxiety. *Id*. On examination, Plaintiff was fully alert and oriented; she was in no apparent distress; and her neurological and psychiatric findings were unremarkable. *Id*. Plaintiff was assessed with "loss of consciousness," and laboratory testing and imaging were ordered. Tr. 396-98. She was to follow up in two weeks after testing. Tr. 398. At a follow-up visit on March 8, 2018, Plaintiff reported three more loss of consciousness episodes (Tr. 391), and on March 22, 2018, she reported six more episodes, as well as headaches and anxiety (Tr. 408).

Plaintiff followed up at Mount St. Mary's on December 10, 2018, complaining of worsening headaches and "spells" triggered by stress which she believed were seizures. Tr. 387. It was noted that an echocardiogram and EEG were normal; MRI results from March were unavailable. *Id*. Depression screening was also positive, and Plaintiff indicated that she was starting counseling next week. *Id*. She was started on methylprednisolone for headaches. Tr. 388. At a December 20, 2018 primary care visit, Plaintiff's depression screening again indicated severe depression, but she acknowledged that she had not taken her medication "in months." Tr. 404. On January 4, 2019, Plaintiff reported worsening depression but still had not had her medication "in quite some time." Tr. 383. She also reported continued "blackout spells[.]" *Id*. Ms. Stevens limited Plaintiff to "no driving until cleared by neurology" and restarted Celexa. Tr. 386.

On March 5, 2019, Plaintiff presented to the ED at NFMMC complaining of a headache with 40-minute onset, radiating pain across her head, and some nausea. Tr. 462. She reported taking naproxen and smoking marijuana, but neither improved her symptoms. Tr. 462. Plaintiff reported a history of anxiety, panic attacks, and migraines. *Id*. She also reported a history of seizures but noted she was not currently on seizure medication. *Id*. On examination, Plaintiff was noted to be alert, in mild distress, anxious, and hyperventilating, but otherwise her examination

results were unremarkable. Tr. 464. A CT scan of the head was likewise unremarkable. Tr. 465. Plaintiff was discharged home in stable condition. Tr. 466.

On March 7, 2019, Plaintiff received an evaluation for migraines and seizures with Bajinder Singh, M.D. ("Dr. Singh"). Tr. 474-76. Plaintiff reported headaches, dizziness, seizure, tingling, and numbness. Tr. 474. She reported that her symptoms had progressively worsened, and headaches occurred every day. *Id*. She also reported difficulty sleeping at night, with "seizure like" activity. *Id*. Dr, Singh prescribed Topamax for headaches. Tr. 475. At a follow-up visit on May 2, 2019, Plaintiff reported continuing "passing out [] seizure like episodes." Tr. 471. She also reported that Topamax was not helpful for her headaches. *Id*. Plaintiff told Dr. Singh that a cardiology work-up for seizures was negative. Tr. 472. Dr. Singh referred Plaintiff for long-term video EEG monitoring and increased Topamax for migraines. *Id*.

On April 18, 2019, Plaintiff initiated mental health treatment with Ms. Fant at NFMMC. Tr. 527-29. She reported anxiety, depression, and sleep difficulty. *Tr. 527.* On examination, mood and affect were sad, depressed, and tearful, thought process included tangential and racing thoughts; visual hallucinations were noted; and judgment and impulse control were moderate with partial insight. Tr. 528. Lamotrigine, trazodone, and prazosin were started. *Id*.

At a follow-up visit, on May 9, 2019, Plaintiff reported increased anxiety and depression, inability to sleep, anhedonia, low energy, decreased judgment, increased activity, easy distractibility, irritability, nightmares, flashbacks, and racing thoughts. Tr. 514, 566. On examination, mood and affect were sad, depressed, and tearful; speech was hyperverbal; thought process included racing thoughts and was tangential; visual hallucinations were noted; judgment and impulse control were moderate; insight was partial; and concentration was fair. Tr. 515. Ms. Fant prescribed lamotrigine, trazodone, and prazosin. *Id*. Plaintiff was also taking Zofran for

8

nausea. *Id*. At a follow-up visit on May 12, 2019, Plaintiff reported similar symptoms. Tr. 665-67. On May 29, 2019, Plaintiff reported improved sleep and nightmares but "all over the place" mood. Tr. 517. There were no side effects noted except dizziness and nausea, which were helped by Zofran. *Id*. On examination, Plaintiff's mood was improved and more euthymic, and lamotrigine was increased. *Id*.

On June 9, 2019, Plaintiff was admitted to Children's Hospital Epilepsy Monitoring Unit for an evaluation for migraines and possible seizures. Tr. 492. She reported a significant worsening of migraine headaches and possible seizures episodes that had started one-and-one-half to two years earlier. *Id*. It was noted that the seizures were triggered by significant stress, such as fighting with her husband or stress at work. *Id*. Her seizure episodes were described as" bilateral fist clinching and tremulousness/low amplitude shaking" but "no clear generalized tonic-clonic features." *Id*. Further, no tongue bites or bowel or bladder incontinence were described. *Id*. Plaintiff also reported that she had significant anxiety which seemed to bring on the seizures. *Id*. Bright lights or a sudden change in lighting were also reported to bring on the seizures. *Id*. Plaintiff's video EEG was normal, and a "typical event" of eyes rolling up and body shaking without electrographic abnormalities was captured during photic stimulation of the eyes. Tr. 494, 495. Plaintiff received epilepsy monitoring through June 12, 2019, during which her seizure episodes were classified as non-epileptic stress-related events or "pseudoseizures." Tr. 503. Physical and neurological examinations, as well as EEG, were normal, and no clinical seizures or EEG seizures were recorded. Tr. 504, 505.

On June 19, 2019, Plaintiff had a medication management visit with Ms. Fant at NFMMC. Tr. 519-20. She reported that trazodone was no longer as effective; and although she was able to fall asleep, she was not able to stay asleep.  Tr. 519. She also reported that prazosin was working

effectively, and she was not having nightmares. *Id*. Although Plaintiff endorsed fluctuating mood, she continued to have some improvement due to increased lamotrigine. *Id*. She also reported continuing anxiety, for which Ms. Fant prescribed buspirone. Plaintiff's mood and affect were "more calm, less manic," and other mental status findings were essentially normal. *Id*.

On July 12, 2019, Plaintiff reported poor sleep and continued anxiety despite the medication changes. Tr. 521. Ms. Fant added mirtazapine. *Id*. On July 26, 2019, Plaintiff's anxiety was improved but mood swings had increased. Tr. 523. Buspirone, trazodone, lamotrigine, and Zofran were discontinued, and mirtazapine was continued. *Id*. On August 16, 2019, Plaintiff reported that mirtazapine, oxcarbazepine, and prazosin were working effectively. Tr. 525.

On August 20, 2019, Plaintiff underwent a medical consultative examination with Nikita Dave, M.D. ("Dr. Dave"). Tr. 547-50. Among other allegations, Plaintiff reported that she had been having headaches since childhood that were associated with photophobia, sonophobia, nausea, and occasionally vomiting. Tr. 547. Dr. Dave opined that Plaintiff may have some need to avoid smoke, dust, fumes, inhalants, chemicals, extremes of temperature, and severe sustained physical exertion due to her asthma, and avoid ladders, heights, sharp instruments, and machinery due to her seizure disorder. Tr. 550.

On August 20, 2019, Plaintiff underwent a psychiatric consultative examination with David Schaich, Ph.D. ("Dr. Schaich"). Tr. 541-44. Plaintiff reported panic attacks, depression, anxiety, seizure disorder, and sleep difficulty. Tr. 541. On examination, Plaintiff had coherent and goal directed thought processes; appropriate affect; anxious mood; intact attention and concentration; and intact recent and remote memory skills. Tr. 543. Her cognitive functioning was below average, with somewhat limited general fund of information; and insight and judgment were fair. *Id*. Dr. Schaich opined that Plaintiff would have no limitations in understanding, remembering, and

following simple and complex instructions; making decisions; sustaining concentration and pace; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions; and moderate limitations in interacting with supervisors, co-workers, and the public; regulating emotions; controlling behavior; and maintaining well-being. Tr. 544.

Thereafter, Plaintiff's file was reviewed by state agency psychological consultant M. Butler, Ph.D. ("Dr. Butler"), at the initial level on September 11, 2019 (Tr. 75-82), and by state agency psychological consultant V. Ng, Ph.D. ("Dr. Ng"), at the reconsideration level on November 27, 2019 ((Tr. 117-19). Both doctors opined that Plaintiff had moderate limitations in interacting with others. Tr. 75-82, 117-119. Dr. Butler opined that Plaintiff had no limitations in understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself; and Dr. Ng opined that Plaintiff had moderate limitations in those domains. *Id*.

At a medication management visit with Ms. Fant on October 17, 2019, Plaintiff reported that her medications were effective for stabilizing her mood. Tr. 560. Plaintiff also reported that she recently discovered that her birth mother had been diagnosed with ADHD, and she wanted to be assessed for ADHD, since she "suffered through school with lack of paying close attention." *Id*. Plaintiff also reported easy distractibility, fidgeting, leaving her seat, excessive talking, difficulty staying seated, and other symptoms. *Id*. Ms. Fant determined that Plaintiff met the criteria for Adult ADHD. *Id*. Ms. Fant noted that Plaintiff failed to give close attention to details; had difficulty sustaining attention; did not listen when directly spoken to; did not follow through with instructions; and found it difficult to organize tasks and activities. Tr. 560. She also noted that Plaintiff would avoid, or was reluctant to engage, in tasks requiring sustained mental effort, and

she was easily distracted and forgetful, would fidget, and constantly leave her seat when expected to be seated. *Id*. Ms. Fant explained that there is a "genetic link" in Plaintiff's condition (ADHD), and Plaintiff stated that she was relieved to know that she has this condition since "she struggled in school" and "although she did overcome it and graduated [at] the top of her class, it was very difficult." *Id*.

The same day, Plaintiff had a routine visit with Ms. Stevens at Mount St. Mary's. Tr. 761-63. She continued to report blackout spells. Tr. 761. Plaintiff requested a work note stated that she was totally disabled due to her symptoms. *Id*. Ms. Stevens noted that consultation with Dr. Singh indicated normal echocardiogram and EEG, and Plaintiff's seizure/syncope episodes were "suspicious for psychological etiology." *Id*. Topamax had recently been increased. Tr. 761. Ms. Stevens again limited Plaintiff to "no driving until cleared by neurology." Tr. 763.

On July 9, 2020, Plaintiff had a follow-up visit with Dr. Singh. Tr. 805. She was approximately eight months pregnant at the time and reported daily "seizure-like" episodes. Tr. 805. She also reported right-sided face numbness, and three to four migraines per week. *Id*. She had stopped Topamax due to pregnancy. Tr. 806. Dr. Singh opined that her episodes were "related to stress and not epileptic in nature." *Id*. Dr. Singh further opined that there was "no evidence for true seizure activity" and "no need for meds at this time." *Id*.

On September 23, 2020, Plaintiff saw Ms. Stevens for a physical. Tr. 822. She reported that her mood had been down after giving birth, and she had "re-enrolled herself in counseling at NFMMC." *Id*. Ms. Stevens noted that Plaintiff's work-up for her "repeated blackout spells" was "essentially negative." *Id*. Plaintiff's physical examination was unremarkable, and her psych exam noted appropriate mood and effect; Plaintiff was noted to be laughing and giggling. Tr. 823.

As noted above, Plaintiff challenges the ALJ's RFC finding. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on May 14, 2019, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not

disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Here, the ALJ complied with the regulations, and contrary to Plaintiff's contention, the ALJ thoroughly considered the entire record, including the treatment records and the opinion evidence, to formulate an RFC that properly accounted for all of Plaintiff's credible limitations, as supported by the record. First, the ALJ reasonably found Ms. Fant's October 2019 opinion "not persuasive." Tr. 26. Although Ms. Fant assessed several limitations related to Plaintiff's attention and concentration (Tr. 560), the ALJ reasonably found that Ms. Fant's extreme limitations were

unsupported by her own essentially unremarkable mental status findings and inconsistent with other record evidence. Tr. 26. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

In support of her contention that the ALJ did not properly evaluate the persuasiveness of Ms. Fant's opinion, Plaintiff cites to findings from Ms. Fant that Plaintiff had anxiety, depression, racing thoughts, and perceptual disturbances. *See* ECF No. 8-1 at 13. While Plaintiff highlights some abnormal findings during Plaintiff's course of treatment with Ms. Fant, the treatment records repeatedly noted that Plaintiff was alert and had full orientation, intact memory, fair concentration, average fund of knowledge, good reliability, full insight, good judgment and impulse control, and average intellect. Tr. 515, 517, 519, 521, 523, 525, 528, 530, 534, 566, 569, 664.

Other sources similarly reported that Plaintiff was cooperative and had appropriate mood, full orientation, good attention and concentration, normal fund of knowledge, intact memory. Tr. 395-96, 402, 405, 408, 414, 416, 423, 427, 464, 472, 475, 493, 498, 532, 536, 538, 551, 602. After periods of noncompliance (Tr. 383, 400), Ms. Fant noted that Plaintiff's mental conditions improved with treatment. Tr. 24, 517, 523, 525. Thus, the fact that the record contains some abnormal findings does not undermine the ALJ's finding that Ms. Fant's opinion was unpersuasive, where, as here, there is also contrary evidence. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*.") (emphasis in the original) (citations omitted).

The ALJ also reasonably found Ms. Fant's attention and concentration limitations inconsistent with the essentially unremarkable findings of consultative examiner Dr. Schaich. Tr. 26. Although Dr. Schaich found that Plaintiff's cognitive functioning was below average and her fund of information was somewhat limited, he also found that Plaintiff was cooperative and had

coherent and goal directed thoughts, intact attention and concentration, intact memory, and full orientation. Tr. 543. Further, Ms. Fant's extreme limitations were inconsistent with Dr. Schaich's opinion that Plaintiff had no limitation in her ability to understand, remember, and apply simple and complex instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance; and had only moderate limitation in her ability to interact with others and regulate emotions, control behaviors, and maintain well-being. Tr. 544. *See Mongeur v. Heckler*, 722 F.3d 1033, 1039 (2d Cir. 1983) (A consultative examiner's opinion can constitute substantial evidence in support of an ALJ's determination).

The ALJ found Dr. Schaich's opinion to be "partially persuasive," as it was supported by his mental status examination and consistent with other medical evidence of record showing largely conservative mental health treatment since Plaintiff's alleged onset date and improvement through adjustments in her prescribed medications. Tr. 26, 542-43. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920 (c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be"). The ALJ also noted that Dr. Schaich specializes in psychology; he personally evaluated Plaintiff; and he is familiar with the requirements of the disability program. Tr. 26. *See* 20 CFR 404.1520c(c)(3)(v), 416.920c(c)(3)(v), 404.1520c(c)(4), & 416.920c(c)(4). However, the ALJ found Dr. Schaich's opinion only partially persuasive, explaining that Dr. Schaich's own finding that Plaintiff has below average intelligence, as well as the overall mental treatment record, indicates that Plaintiff has greater limitations in memory and concentration than Dr. Schaich assessed. Tr. 26.

As the ALJ noted, Ms. Fant's attention and concentration limitations were also inconsistent with the opinion of state agency medical consultant Dr. Ng. Tr. 26, 119. After reviewing the evidence of record, including Ms. Fant's treatment notes and Dr. Schaich's consultative examination, Dr. Ng assessed that Plaintiff could perform simple work involving brief and superficial contact with others. Tr. 119, 139, 146. The ALJ found Dr. Ng's opinions to be "more persuasive," as he rendered his assessment after Plaintiff's ADHD diagnosis, which supported greater limitations in concentration and pace consistent with the contemporaneous treatment record. Tr. 26.

In addition, noted the ALJ, Dr. Ng's moderate limitations in adaptation were supported by Dr. Schaich's clinical findings and consistent with the longitudinal observations of Plaintiff's mental health treating providers that Plaintiff had mood lability. Tr. 26, 119, 542-43. Moreover, administrative findings from state agency medical and psychological consultants, such as Dr. Ng and Dr. Schaich, can constitute substantial evidence in support of an ALJ's decision. *See* 20 C.F.R. § 404.1513a(b)(1), 416.913a(b)(1) ("State Agency physicians are highly qualified experts in the evaluation of the medical issues involved in disability claims under the Act"); *Micheli v. Astrue*, 501 F. App'x. 26, 29 (2d Cir. 2012) (finding that opinions of state Agency physicians provided substantial evidence to support ALJ's RFC findings). Accordingly, the ALJ reasonably factored the opinions of Dr. Ng and Dr. Schaich into Plaintiff's RFC. Tr. 26.

Finally, Plaintiff asserts that the ALJ's hypothetical question to the vocational expert ("VE") was incomplete because it did not incorporate Ms. Fant's attention and concentration limitations. *See* ECF No. 8-1 at 16. As such, argues Plaintiff, the VE's response to the hypothetical could not provide substantial evidence to support the ALJ's step five finding. *See id*. However, Plaintiff's argument merely rehashes the arguments already addressed above. Here, the ALJ's

hypothetical question properly included each of Plaintiff's credibly established limitations and appropriately mirrored Plaintiff's RFC, which, as discussed above, is supported by substantial evidence. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (court found that ALJ properly posed hypothetical question to the VE when that hypothetical was based on ALJ's correct RFC assessment); *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)); *see also Mancuso v. Astrue*, 361 F. App'x. 176, 179 (2d Cir. 2010) (the Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical individual's capabilities so long as the hypothetical is based on substantial evidence). Contrary to Plaintiff's argument, the ALJ is not required to submit to the VE every limitation alleged by the claimant but must only convey all of a claimant's credibly established limitations. The VE's opinion, therefore, is substantial evidence that supports the ALJ's determination.

Based on the foregoing, the ALJ provided sufficient reasons for discounting Ms. Fant's restrictive limitations as they were unsupported by her own examination findings and contradicted by other medical evidence. Plaintiff's contention that the ALJ should have found additional limitations conforming to Plaintiff's own interpretation of the evidence (*see* ECF NO. 8-1 at 15) is simply a request for a reweighing of the evidence in her favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Accordingly, Plaintiff's argument is without merit.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence and the treatment notes, and the ALJ's findings are supported by substantial evidence. When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and, as previously noted, the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE